[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10248
Non-Argument Calendar
_____

D.C. Docket No. 6:10-cr-00281-GAP-KRS-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

EFRAIM DIVEROLI,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 10, 2013)

Before CARNES, Chief Judge, BARKETT and MARTIN, Circuit Judges.

MARTIN, Circuit Judge:

At issue in this appeal is whether a district court has jurisdiction to entertain a motion to dismiss the charging document in a criminal case under Federal Rule of Criminal Procedure 12(b)(3)(B) while the defendant's direct appeal is pending.

We hold district courts lack jurisdiction to decide a Rule 12(b)(3)(B) motion under these circumstances.  Therefore, we vacate the district court's merits decision and remand with instructions to dismiss for want of jurisdiction.

## I.

Efraim Diveroli was charged by Information[1] with possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  He pleaded guilty, and the district court sentenced him to 48 months' imprisonment.  Diveroli filed a timely notice of appeal on September 12, 2011.[2]

After briefing on that appeal had begun, but before we decided it, Diveroli filed a motion in the district court to dismiss the Information pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B).  At first, the district court dismissed the motion, concluding that Diveroli's notice of appeal divested the court of jurisdiction to decide it.  But at Diveroli's request, the district court reconsidered its conclusion, determined it had jurisdiction over the motion notwithstanding the appeal, and denied the motion on the merits.  Diveroli appeals that decision.

## II.

Even if no party raises the issue, we are obligated to address the district court's jurisdiction to issue a ruling we are reviewing on appeal.  United States v.

---

[1] Diveroli waived his right to prosecution by indictment.

[2] See United States v. Diveroli, 512 F. App'x 896, 902 (11th Cir. 2013) (affirming Diveroli's conviction and sentence).

Dunham, 240 F.3d 1328, 1329 (11th Cir. 2001).  Subject to exceptions not relevant here, "'[t]he filing of a notice of appeal is an event of jurisdictional significance — it confers jurisdiction on the court of appeals and divests the district court of its control over the aspects of the case involved in the appeal.'"  United States v. Tovar-Rico, 61 F.3d 1529, 1532 (11th Cir. 1995) (quoting Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58, 103 S. Ct. 400, 402 (1982)).  When an appeal is filed, "the district court is divested of jurisdiction to take *any* action with regard to the matter except in aid of the appeal."  Shewchun v. United States, 797 F.2d 941, 942 (11th Cir. 1986) (internal quotation marks omitted).  Of course, the question of whether a charging document conferred jurisdiction on the district court to act at all in a criminal case is necessarily an "aspect[] of the case involved in" a direct appeal from a judgment of conviction.  Tovar-Rico, 61 F.3d at 1532; see United States v. McIntosh, 704 F.3d 894, 901-03, 906 (11th Cir. 2013) ("An indictment that fails to invoke a court's jurisdiction or to state an offense . . . necessarily undermines the validity of a conviction.").  In fact, a defendant may challenge a fatal defect in the charging document for the first time on appeal, and we are required to address the issue on our own even if he does not.  See United States v. Pacchioli, 718 F.3d 1294, 1307 (11th Cir. 2013); United States v. Izurieta, 710 F.3d 1176, 1179 (11th Cir. 2013); see also McIntosh, 704 F.3d at 906 (recognizing that a defendant may raise such a claim even after pleading guilty).

3

In this case, Diveroli has asserted that Federal Rule of Criminal Procedure 12 provides an exception to this general rule against dual jurisdiction. Rule 12 lists certain motions that "must be raised before trial," among them "a motion alleging a defect in the indictment or information . . . ." Fed. R. Crim. P. 12(b)(3). That timing requirement, however, contains an exception: "at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense . . . ." Id. at 12(b)(3)(B). Based on this exception, we have held that we must vacate a conviction and sentence at any time until the mandate issues if the charging document contains a jurisdictional defect. Izurieta, 710 F.3d at 1179. But we have not previously addressed in a published opinion whether — because Rule 12 speaks of "motions" and deals mainly with timing in the trial court — the exception abrogates the general rule that once a case is on appeal, the district court is divested of jurisdiction over it. We hold that it does not.

III.

In this case, the district court reconsidered its original conclusion that it lacked jurisdiction to consider Diveroli's Rule 12(b)(3)(B) motion based on our decision in United States v. Elso, 571 F.3d 1163, 1166 (11th Cir. 2009). In Elso we said that "Rule 12(b)(3)(B) authorizes the district courts, 'at any time while the case is pending,' to hear a claim that the indictment fails to invoke the court's

4

jurisdiction or to state an offense." Id. (quoting Fed. R. Crim. P. 12(b)(3)(B)). And we held that "Elso's case . . . was no longer pending . . . when the mandate issued" in his direct appeal. Id. Because the mandate had issued before Elso filed his motion, "[t]he district court lacked authority to hear" it. Id. The district court took this language from Elso to mean that it had authority to consider Diveroli's Rule 12(b)(3)(B) motion because the mandate had not issued in his direct appeal, even though that appeal was then pending before us.[3]

But Elso did not mean that Rule 12(b)(3)(B)'s exception clause abrogates the normal rule that the filing of a notice of appeal divests the district court of jurisdiction over those parts of the case at issue on appeal. The Elso ruling was limited to saying, definitively, that a case is "no longer pending" for purposes of the rule once the mandate in an appeal has issued. Elso did not say that a case remains pending before the district court even when it is pending on appeal. Id. As best we can tell, no court has ever held as much. And there are good reasons why.

---

[3] The government also appears to interpret Elso this way on appeal, although it challenged jurisdiction over Diveroli's motion in the district court. Ordinarily, we would consider the government to have abandoned the issue. See United States v. Gupta, 572 F.3d 878, 887 (11th Cir. 2009). However we are obligated to resolve sua sponte questions of jurisdiction, so the district court's jurisdiction to have ruled is an issue that may not be abandoned. McIntosh, 704 F.3d at 901 ("Jurisdiction as it is understood today — meaning the courts' statutory or constitutional power to adjudicate the case — cannot be waived . . . ." (internal quotation marks omitted)).

First, nothing in the plain text of the rule mandates it. Rule 12(b)(3)(B) just states that "the court may hear a claim" that the charging document fails to invoke the district court's jurisdiction or state an offense "at any time while the case is pending . . . ." Fed. R. Crim. P. 12(b)(3)(B). We have read that text simply to support our view that we are obliged to hear such a claim, "provided the mandate has not issued," even if it comes up for the first time on appeal. Izurieta, 710 F.3d at 1179. Other circuits agree that, once the case is on appeal, the Rule simply confirms that jurisdictional questions must be addressed in the court of appeals even if they were not raised earlier. See United States v. Davila, 461 F.3d 298, 308 (2d Cir. 2006); United States v. Adesida, 129 F.3d 846, 850 (6th Cir. 1997) (discussing the previous version of the Rule). None have held the Rule means a district court may decide a motion to dismiss the charging document while an appellate court is reviewing a conviction and sentenced based upon it. Rather than saying that a motion may be filed in the district court so long as the case is pending, the better reading of the last clause of Rule 12(b)(3)(B) is merely as an exception to the waiver rule in the first clause — that is, a failure to put a challenge to the charging document in a pretrial motion results in waiver unless the challenge is jurisdictional. See United States v. Seher, 562 F.3d 1344, 1359 (11th Cir. 2009) (stating that Rule 12(b)(3)(B)'s "at any time while the case is pending" language simply provides an "exception to th[e] waiver rule" stated in the earlier clause).

Second, the very problems that animate the general rule against dual jurisdiction would arise if a district court were to entertain a Rule 12(b)(3)(B) motion while the case is on appeal.  The general rule against dual jurisdiction "serves two important interests:  judicial economy, for it spares the trial court from passing on questions that may well be rendered moot by the decision of the Court of Appeals; and considerations of fairness to parties who might otherwise be forced . . . to fight a 'two front war' for no good reason."  Shewchun, 797 F.2d at 943.  This case is a perfect example of the second consideration, because the government was simultaneously defending Diveroli's conviction in both the district court and this court.  It also provides a vivid example of the former.  If district courts retain jurisdiction to review a defendant's motion to dismiss the charging document despite a pending appeal, it would wreak havoc in both places.  If the appeal is successful, then the motion would be mooted.  If the motion is successful before the appeal is decided, then the appeal would be mooted.  And, presumably, if the motion is successful after the appeal is decided but before the mandate issues, then the district court's decision would nullify the appeals court's decision.  Nothing in the rule commands that we countenance this result. See, e.g., United States v. Turkette, 452 U.S. 576, 580, 101 S. Ct. 2524, 2527 (1981) ("[A]bsurd results are to be avoided . . . ."); United States v. Brown, 333 U.S. 18, 27, 68 S. Ct. 376, 381 (1948) ("No rule of construction necessitates our acceptance

7

of an interpretation resulting in patently absurd consequences.").  Permitting this odd deviation would run us squarely into "the confusion and waste of time" that the rule against dual jurisdiction guards against.  Tovar-Rico, 61 F.3d at 1532; see Griggs, 459 U.S. at 58, 103 S. Ct. at 402 ("[A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously.").

Further, interpreting Rule 12(b)(3)(B) to give district courts authority to hear post-appeal motions to dismiss the indictment or information would short circuit other rules.  For example, Rule 34 requires a defendant to file with the district court any motion to arrest judgment based on a jurisdictional deficiency in the indictment or information "within 14 days" after a verdict or guilty plea.  Fed. R. Crim. P. 34.  If Diveroli could nonetheless move under Rule 12(b)(3)(B) to dismiss the Information for the same reason long after his conviction and sentence were on appeal, then Rule 34's timing requirement would effectively be meaningless.  The same would be true of Federal Rule of Appellate Procedure 4(b)(3), which keys the timeliness of an appeal from a judgment of conviction to a timely filed Rule 34 motion.  Unless we cannot avoid it, we will not interpret a part of a rule in a way that renders other provisions superfluous.  See United States v. Julian, 633 F.3d 1250, 1255 (11th Cir. 2011) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented,

no clause, sentence, or word shall be superfluous, void, or insignificant." (internal quotation marks omitted)).

Finally, refusing to read Rule 12(b)(3)(B) to require dual jurisdiction is perfectly consonant with the Rules' own admonition that they should "be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." Fed. R. Crim. P. 2. Once a case is on direct appeal, a defendant need not waste his time and money going back to the district court to challenge the jurisdictional adequacy of the charging document and then following the result back to us. Rather, he need only alert us to the potential problem — if we do not find it on our own — at any time before the mandate issues. Izurieta, 710 F.3d at 1179 ("Until the mandate issues, [this] court is required, if it has any doubt about the matter, to determine whether the indictment states an offense.").[4]

## IV.

Because Diveroli's conviction and sentence were already on direct appeal when he filed his Rule 12(b)(3)(B) motion to dismiss the Information for failure to

---

[4] The mandate in Diveroli's direct appeal issued on April 16, 2013. Although we are generally obligated to examine whether a charging document invokes the district court's jurisdiction (or states an offense) regardless of whether that issue was properly presented to the district court, Diveroli's case is no longer "pending" for purposes of Rule 12(b)(3)(B). See Izurieta, 710 F.3d at 1179. We therefore have no occasion to review Diveroli's contentions on the merits of his motion to dismiss the Information.

state an offense, we conclude the district court lacked jurisdiction to entertain it. Therefore, the court should not have decided the motion. We vacate the district court's denial of that motion on the merits, and we remand with instructions to dismiss the motion for lack of jurisdiction.

**VACATED** and **REMANDED** with instructions to **DISMISS** the motion for lack of jurisdiction.